998 So.2d 841 (2008)
Larry POPWELL, Sr. and Brenda Popwell, Plaintiffs-Appellants
v.
STATE of Louisiana; Steven and Amy Beard; Charles W. and Carol Avant; George D. and Sabrina Green, Defendants-Appellees.
No. 43,848-CA.
Court of Appeal of Louisiana, Second Circuit.
December 3, 2008.
*842 Chris L. Bowman, Jonesboro, for Plaintiffs-Appellants.
Rabun, McCallum & Dozier by Deanna D. McCallum, Farmerville, for Defendants-Appellees.
Before WILLIAMS, GASKINS and PEATROSS, JJ.
GASKINS, J.
The paternal grandparents of three minor children appeal from a trial court judgment granting exceptions of no cause and no right of action in their suit to obtain visitation with the children, despite their father's voluntary surrender of the children and the subsequent adoptions of two of the children. We affirm the trial court judgment.

FACTS
Larry Popwell, Sr. and Brenda Popwell are the parents of Larry Popwell, Jr. Larry Jr. and his wife, Elizabeth Ann Green, had three sons: Christopher (DOB 9/92), Nickolas (DOB 6/97) and William (DOB 10/01). Elizabeth Ann died in 2002, and Larry Jr. later remarried. In 2006, Brenda Popwell called the police due to her concerns about her grandsons' welfare. As a result, the boys were removed from the home of their father and stepmother. Initially they were placed with the paternal grandparents. Criminal charges were subsequently filed against Larry Jr. and his current wife, Mary Jannise Popwell.
In December 2006, the boys were removed by the state from the grandparents' home. They were separated and placed with other family members. The grandparents were granted visitation with the boys at this time.
Apparently to avoid criminal prosecution, Larry Jr. signed a voluntary act of surrender releasing the children for adoption. The maternal grandmother, Carol Avant, and her husband Charles adopted Nickolas, who had been placed with them in December 2006. The maternal grandfather, George Green, and his wife Sabrina adopted William, who was placed with them in December 2006. Christopher was originally placed with a couple named Wendy and Matt, whose identities are not discussed further in the transcript. He was eventually placed with Steven and Amy Beard; it is unclear whether he has been adopted. Mr. Beard was the police officer originally contacted by Mrs. Popwell; he was apparently in charge of the subsequent investigation.
After the adoptions of the two younger boys, the paternal grandparents were no longer allowed visitation with them. In *843 August 2007, the Popwells filed suit against the Greens, the Avants, and the Beards, seeking court-ordered visitation.
A hearing was held on January 17, 2008. Testifying during the plaintiffs' case were the plaintiffs, Mrs. Green and the Avants. No appearance was made by the Beards.[1] The plaintiffs asserted that, while they were currently seeing Christopher whenever they wished, they wanted court-ordered visitation with him to ensure that their access to him continued even if the Beards changed their minds.
At the end of the plaintiffs' case, the Avants and the Greens raised exceptions of no cause and no right of action, as well as an oral motion for involuntary dismissal. The trial court then took the matter under advisement.[2] On February 13, 2008, the Avants and the Greens filed a joint exception of no cause of action or no right of action.
Written reasons for judgment were rendered on April 3, 2008. The trial court concluded that neither the statutory scheme nor the jurisprudence allowed the result being sought by the Popwells. Accordingly, it ruled in favor of granting the exceptions and the motion for voluntary dismissal. A judgment granting the exceptions of no cause and no right of action was signed by the trial court on August 13, 2008.
The Popwells appeal.

LAW
La. C.C. art. 214 states:
C. If the adoptive parent is married to a blood parent of the adopted person, the relationship of that blood parent and his blood relatives to the adopted person shall remain unaltered and unaffected by the adoption. Otherwise, upon adoption: the blood parent or parents and all other blood relatives of the adopted person, except as provided by Ch.C. Article 1264, are relieved of all of their legal duties and divested of all of their legal rights with regard to the adopted person, including the right of inheritance from the adopted person and his lawful descendants; and the adopted person and his lawful descendants are relieved of all of their legal duties and divested of all of their legal rights with regard to the blood parent or parents and other blood relatives, except the right of inheritance from them.[3]
La. Ch.C. art. 1245, found under the chapter titled "INTRAFAMILY ADOPTIONS," provides:
A. The consent of the parent as required by Article 1193 may be dispensed with upon proof by clear and convincing evidence of the required elements of either Paragraph B, or C of this Article.
B. When a petitioner authorized by Article 1243 has been granted custody of the child by a court of competent jurisdiction and any one of the following conditions exists:
(1) The parent has refused or failed to comply with a court order of support without just cause for a period of at least six months.

*844 (2) The parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months.
C. When the spouse of a stepparent petitioner has been granted sole or joint custody of the child by a court of competent jurisdiction or is otherwise exercising lawful custody of the child and any one of the following conditions exists:
(1) The other parent has refused or failed to comply with a court order of support without just cause for a period of at least six months.
(2) The other parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months.
La. Ch. C. art. 1254 states:
A. Intervention in intrafamily adoption proceedings shall not be allowed except on motion to the court and a showing of good cause.
B. Such intervention shall be limited to persons having a substantial caretaking relationship with the child for one year or longer, or any other person that the court finds to be a party in interest.
C. The intervention of a party in interest shall be for the limited purpose of presenting evidence as to the best interests of the child.
La. Ch. C. art. 1256 provides:
A. Except as otherwise provided by Paragraph C of this Article, upon a final decree of adoption, the parents of the child whose rights have not been previously terminated by a surrender or a judgment of termination and all other blood relatives of the adopted child are relieved of all their legal duties and divested of all their legal rights with regard to the adopted child including the right of inheritance from the adopted child and his lawful descendents, and the adopted child and his lawful descendents are relieved of all legal duties and divested of all legal rights with regard to the parents and other blood relatives.
B. The right of the child to inherit from his parents and other blood relatives is unaffected by the adoption.
C. If the adoptive parent is married to a blood parent of the adopted child, the relationship of that blood parent and his blood relatives to the adopted child shall remain unaltered and unaffected by the adoption.
D. Under the circumstances and pursuant to the procedures authorized by Chapter 14 of this Title, grandparents may obtain limited visitation rights to the adopted child.
La. Ch. C. art. 1264, which is found in Chapter 14 of Title XII pertaining to adoption of children, addresses postadoption visitation rights of grandparents:
Notwithstanding any provision of law to the contrary, the natural parents of a deceased party to a marriage dissolved by death whose child is thereafter adopted, and the parents of a party who has forfeited the right to object to the adoption of his child pursuant to Article 1245 may have limited visitation rights to the minor child so adopted.

DISCUSSION
We note at the outset that the judgment from which the Popwells appeal deals with only the exceptions filed by the Avants and the Greens. The Beards made no appearance in these proceedings. Accordingly, this opinion addresses only the paternal grandparents' pursuit of visitation rights with the two younger children who have been adopted.
The Popwells argue that the trial court erred in interpreting the law "in a black-and-white manner" without considering *845 the best interest of the children. They maintain that, given their close relationship with the boys and their actions in bringing their abuse to the authorities' attention, it is in the children's best interest to allow them visitation. In support of their argument, they cite La. C.C. art. 136[4], which deals with granting visitation rights to relatives under extraordinary circumstances if in the best interest of the child; however, this article involves child custody, not adoption. Likewise, the case they cite, Lindsey v. House, 29,790 (La. App. 2d Cir.9/24/97), 699 So.2d 1190, deals with postdivorce visitation; it does not involve adoption.[5]
The Avants and the Greens point out that the Popwells failed to intervene in the adoption proceedings pursuant to La. Ch. C. art. 1254. Had they done so, that article would have allowed them to raise the issue of the best interest of the child. Furthermore, the Popwells did not appeal or seek to annul the adoption judgments. The unrefuted evidence in this record demonstrates that the adoptions of Nickolas and William are now final.
Like the trial court, we find that neither the statutory scheme nor the jurisprudence allows for the paternal grandparents to be given visitation rights to the adopted children under the circumstances presented here. La. C.C. art. 214(C) provides that upon adoption, all blood relatives are divested of their legal rights with respect to the adopted person, except as may be provided by La. Ch. C. art. 1264; this includes the divestiture of the grandparents' right of visitation. Likewise, La. Ch. C. art. 1256, which tracks much of the same language as La. C.C. art. 214(C), provides for the divestiture of the rights of *846 blood relatives to an adopted child. It permits limited visitation rights for grandparents under the circumstances and procedures set forth in Chapter 14 of Title XII. La. Ch. C. art. 1264, which is found in that chapter, allows limited visitation rights for the parents of a "party who has forfeited the right to object to the adoption of his child pursuant to Article 1245." La. Ch. C. art. 1245 sets forth two grounds upon which a parent is deemed to have forfeited his right to object to an adoption: (1) refusal to comply with an order of support without cause for a specified period of time; and (2) the parent's failure to visit or communicate with the child for a prescribed period of time. Like the trial court, we find that a parent who voluntarily surrendered his children for adoption, as the Popwells' son did in this case, has not forfeited his right to object to the adoption pursuant to Ch. C. art. 1245. Thus, La. Ch. C. art. 1264 is inapplicable here.
Under statutory law, the paternal grandparents in this case have no visitation or other rights to the adopted children. Further, we are unaware of, and the Popwells have not cited, any jurisprudence modifying or conflicting with this interpretation of the statutory law.
Therefore, we find that the trial court correctly granted the exceptions of no cause and no right of action.

CONCLUSION
We affirm the trial court judgment granting the exceptions of no cause and no right of action filed by the Avants and the Greens. Costs of this appeal are assessed against the plaintiffs, Larry Popwell Sr. and Brenda Popwell.
AFFIRMED.
NOTES
[1] Domiciliary service was made on them at their residence through Christopher Popwell.
[2] The trial judge noted his understanding that should he grant the motion for involuntary dismissal, the matter would be appealed. In the event of a reversal, the defendants would then be allowed to complete the presentation of their evidence.
[3] Effective January 1, 2009, the above quoted language will no longer be included in La. C.C. art. 214, which will be rewritten and made part of a chapter on adult adoption. See Acts 2008, § 351. However, see La. Ch. C. art. 1256, which contains much of the same language as the current version of La. C.C. art. 214(C).
[4] La. C.C. art. 136 states, in pertinent part:

B. Under extraordinary circumstances, a relative, by blood or affinity, or a former stepparent or stepgrandparent, not granted custody of the child may be granted reasonable visitation rights if the court finds that it is in the best interest of the child. In determining the best interest of the child, the court shall consider:
(1) The length and quality of the prior relationship between the child and the relative.
(2) Whether the child is in need of guidance, enlightenment, or tutelage which can best be provided by the relative.
(3) The preference of the child if he is determined to be of sufficient maturity to express a preference.
(4) The willingness of the relative to encourage a close relationship between the child and his parent or parents.
(5) The mental and physical health of the child and the relative.
[5] Even if La. C.C. art. 136 were applicable, the article stipulates it should apply "under extraordinary circumstances." The testimony indicates that extraordinary circumstances are not present in this case.

The Popwells originally had custody of the children, but the state removed them. The Popwells had visitation with the children prior to their adoption, but not with Nickolas and William after the adoptions. The adoptive parents of Nickolas were concerned that the Popwells would allow their son and daughter-in-law to have contact with the children. Further, Nickolas had expressed that he did not want to visit with the Popwells. When the Popwells had exercised visitation with Nickolas, they occasionally missed a weekend.
Likewise, William's adoptive parents had had problems with the Popwells' visitation. The Popwells failed to communicate, sometimes not showing up for their visit without warning, or changing the times of visitation at the last minute. The Popwells would make sure they exercised their visitation, however, right before their son had a criminal court date. The adoptive parents of William did not think that he would be safe with the Popwells, and were concerned that they would not honor a court order to prohibit contact between the children and their son.
The Popwells point to the fact that they would facilitate the boys' interaction with each other. The adoptive parents testified that they provide this fraternization, noting that the boys spend some holidays together and keep in touch.